# Tasker's Estate.

*Will—Conversion—Executors and administrators.*

Testator by his will directed as follows: "Knowing that a great part of my real estate is of such a character that it should not be sold only as a market may or should open to profitably dispose of it, I order and direct that my executors shall at their option have five years to dispose of the same without loss to the estate, and if at the end of the five years it should appear to my executors that more time will be necessary to retain the whole or some part thereof that a better price may be had for the same, then I order and direct that a further term not exceeding two years from that time be allowed them, if two thirds of my heirs and executors above mentioned consent to said time being extended to sell and dispose of the same or any part thereof and to that end and purpose I hereby authorize and empower my executors hereinafter named and the survivor or survivors of them to sell and dispose of all or any part of my real estate or residue of the same either at public or private sale for the best price or prices in their judgment that can or may be obtained therefor and upon such terms and conditions as to them may seem best and to grant and convey the same to the purchaser or purchasers thereof, his, her or their heirs and assigns in fee simple, free from all liability for or on account of the application of the purchase money." *Held*, that the will worked a conversion of the real estate, and that taxes and expenses paid by the executors in connection with the real estate were a proper charge against the general estate.

Argued March 21, 1906.   Appeal, No. 83, Jan. T., 1906, by Mary Etta Clark, from decree of O. C. Phila. Co., Jan. T., 1894, No. 325, dismissing exception to readjudication in Estate of Thomas T. Tasker, Sr., deceased.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and STEWART, JJ.   Affirmed.

Exceptions to readjudication.

From the record it appeared that testator by his will dated March 29, 1890, and probated February 9, 1892, directed, inter alia, as follows :

" Item : Knowing that a great part of my real estate is of such a character that it should not be sold only as a market may or should open to profitably dispose of it, I order and direct that my executors shall, at their option have five years to sell and dispose of the same without loss to the estate, and if at the end of the five years it should appear to my executors that more time will be necessary to retain the whole or some part thereof

that a better price may be had for the same then I order and direct that a further term not exceeding two years from the time be allowed them if two-thirds of my heirs or executors above mentioned consent to said time being extended to sell and dispose of the same or any part thereof and to that end and purpose I hereby authorize and empower my executors hereinafter named and the survivor or survivors of them to sell and dispose of all or any part of my real estate or residue of the same either at public or private sale for the best price or prices in their judgment that can or may be obtained therefor and upon such terms and conditions as to them may seem best and to grant and convey the same to the purchaser or purchasers thereof, his, her or their heirs and assigns in fee simple, free from all liability for or on account of the application of the purchase money."

After testator's death considerable sums of money were paid by the executors on account of taxes and expenses on lands in West Virginia. Various proceedings were had relating to the claim for these credits, and finally on exceptions to readjudication HANNA, P. J., filed the following opinion:

In accordance with the opinion of the court, Tasker's Estate, 14 District Rep. 435, the account of the dead executor stated by his executor was recommitted to the auditing judge for reaudit and readjudication. The most important question that arises is whether an equitable conversion is effected by the language of the will. Upon this depends the propriety of the allowance as credits to the executor of payments made by him in connection with certain real estate in West Virginia believed both by testator and his son, one of the executors, to be owned by him. The auditing judge was of opinion that a conversion resulted from the provisions of the will and therefore the expenditures by the executor are proper charges against the estate. At the argument of the exceptions to this conclusion, the main subject of contention was that the expenditures were unnecessary and excessive, and consequently little attention was directed to the question of conversion. The court, not being furnished with a copy of the will, was led, from the references to it in the adjudication, to reach a conclusion contrary to that of the auditing judge; that an equitable conversion did not take place.; that the credits referred to should not be allowed and conse-

quently the exceptions to their allowance were sustained. Subsequently, however, the attention of the court was called to the entire contents of the will. And upon motion of counsel for the executor of the dead executor, in an informal manner it is true, and as if an application for a reargument had been made, granted, the auditing judge was authorized to hear and determine the question, together with other subjects of exception de novo. The readjudication has accordingly been filed wherein the auditing judge adheres to his former opinion, and exceptions thereto are again before the court.

The testator, inter alia, directed his executor to pay certain legacies and annuities and then bequeathed and devised all the residue of his estate to his six children nominatim in equal shares absolutely. He was the owner of both real and personal estate. That testator had in contemplation a sale of his real estate, notwithstanding the devises and bequests to his children, is evident from the succeeding item of his will as follows:

" Knowing that a great part of my real estate is of such a character that it should not be sold only as a market may or should open to profitably dispose of it, I order and direct that my executors shall at their option have five years to sell and dispose of the same without loss to the estate."

This language indicates that while testator had in mind a sale by the executors immediately after his death, if they deemed it for the best interest and advantage of the estate, he also intended to give them power to postpone such sale or sales for a period not exceeding five years from his death, if, in their judgment, a better price might be obtained. In other words, to select the time of sale and at what price to sell. But this postponement was not to be indefinite. The executors might delay for five years, but no longer. And after the expiration of that period they might be compelled to sell in order to carry out the intention of testator : Severns's Est., No. 2, 211 Pa. 68.

Testator gave the executors the further power of election in the same item of his will, viz : " And if at the end of said five years it should appear to my executors that more time will be necessary to retain the whole or some part thereof that a better price may be had for the same, then I order and direct that a further term not exceeding two years from that time be

allowed them if two-thirds of my heirs or executors above named shall consent to said time being extended to sell and dispose of the same or any part thereof."

Here again is but an extension of time within which the executors should carry out the original intention of testator that his real estate be sold at such time and for such price as they deem most desirable and advantageous.

And finally, he further says : " And to that end and purpose I hereby authorize and empower my executors hereinafter named and the survivor or survivors of them to sell and dispose of all or any part of my real estate or the residue of the same either at public or private sale for the best price or prices in their judgment that can or may be obtained therefor," etc.

This latter clause in no wise interferes with or is inconsistent with the prior clause of the will disclosing the intention of testator respecting the sale of all his real estate either immediately or within a reasonable time after his death or within five years thereafter at the option of the executors, or during further term of two years if two-thirds of all the parties interested agree thereto. The whole language of the will is as if testator had said : " I direct my executors to sell all or any part of my real estate immediately after my death. But if they think a delay advantageous to my estate, they may postpone the sale for a period not exceeding five years after my death. And if at the expiration of this period two-thirds of all the parties interested agree upon a further extension of time within which to make sale, then my executors shall be allowed an additional period of two years to sell all or any part of my real estate."

Furthermore, if the last two clauses of the will had been transposed in their order, much of the doubt arising would not have existed. The last clause refers to the sale of the real estate following the residuary clause. If it had preceded the latter, the general form adopted, it would be observed that the final thought of testator was to give to his children "all the rest, residue and remainder of my estate, real, personal and mixed, not otherwise disposed of as above mentioned."

Thus we think creating a common fund of his entire estate, real and personal, for the payment of legacies and annuities ; and only that which remained is bequeathed and devised to

his children; thus bringing the case within the rule that where it is impossible to carry out the provisions of the will unless the real estate is sold, and where there is a blending of the real and personal estate together and it is disposed of as money, then an equitable conversion is the result and the estate is distributable as personalty and not realty: Roland v. Miller, 100 Pa. 47; Hunt's and Lehman's Appeals, 105 Pa. 128; Jones v. Caldwell, 97 Pa. 42.

In the present case testator blended his real and personal estate into a common fund for the payment of his debts, legacies and annuities. And it was only after these were paid or secured he gave to his children the balance remaining.

We have now reached a conclusion contrary to that heretofore expressed, and the fifth and sixth exceptions to the readjudication must be dismissed.

*James W. M. Newlin*, for appellant.—The devise to the testator's six children made them tenants in common in fee, and their power over a precedently conferred fee simple, to wit: to alienate it, could not be restricted by the subsequently added power of sale in the executors: Sheets's Estate, 52 Pa. 257; Urich v. Merkel, 81 Pa. 332; Doyle's Estate, 28 Pa. Superior Ct. 579; Sigel's Estate, 213 Pa. 14; Yerkes v. Yerkes, 200 Pa. 419; Heck's Estate, 170 Pa. 232; Evans v. Smith, 166 Pa. 625; Kaufman v. Burgert, 195 Pa. 274; Brock v. Steel Co., 203 Pa. 249; Sanders v. Mamolen, 213 Pa. 359; Fisher v. Wister, 154 Pa. 65; Jauretche v. Proctor, 48 Pa. 466.

The will of Thomas T. Tasker, Sr., deceased, worked no conversion of his real estate by reason of the power of sale in the executors: Becker's Estate, 150 Pa. 524; McClure's App., 72 Pa. 414; Henry v. McCloskey, 9 Watts, 145; Anewalt's App., 42 Pa. 414.

*C. Berkeley Taylor*, for appellee.—There is a blending of the real and personal estate together, and disposition made of it as money: Hunt's and Lehman's Appeals, 105 Pa. 128; Yerkes v. Yerkes, 200 Pa. 419.

If there was any contingency or discretion at all, it attached to the time of sale, not to the direction to sell. Such discretion does not affect the conversion: Severns's Estate, 211 Pa. 65;

Jones v. Caldwell, 97 Pa. 42; Fahnestock v. Fahnestock, 152 Pa. 56; Roland v. Miller, 100 Pa. 47; Vanuxem's Estate, 212 Pa. 315.

PER CURIAM, May 14, 1906:

The decree is affirmed on the opinion of the court below upon exceptions to the readjudication.

---

## Brennan's Estate.

*Trusts and trustees—Compensation—Real estate—Sale of real estate—Commissions.*

Where testamentary trustees have received their regular commissions, on the sale of real estate they are not entitled to an additional compensation based on the increase in value of the real estate above its assessment at the death of the testator, where this increase was only a reflex of the natural growth of city values.

Where trustees sell real estate free of encumbrances, and actually receive the amount of a mortgage, and immediately pay it over and satisfy the mortgage of record, they are entitled to commissions on the money thus passing through their hands.

· Counsel for a trustee is not entitled to receive a commission for effecting a sale of real estate, where no proofs are submitted that he contracted to act as agent, and his statement that he produced a purchaser is contradicted by one of the parties.

Where trustees take an assignment of a mortgage paying interest at the rate of five per cent and neglect to record the assignment for three years, and there is no legal proof of any reduction in the rate of interest, the trustees will not be permitted to say that the investment was only at the rate of four and four-tenths per cent.

Where counsel to trustees examines and supervises twelve annual accounts, and does other work, such as giving advice for investments, in the preparation of leases, and in the sale of real estate, an allowance of merely $200 for preparing the account and attending the audit, will be increased to a fee of $350 covering all services.

Argued March 22, 1906. Appeals, Nos. 367, Jan. T., 1905, and No. 48, Jan. T., 1906, by John Muldoon et al., and by Clara V. Crouse et al., from decree of O. C. Phila. Co., July T., 1883, No. 83, dismissing exceptions to adjudication in Estate of William Brennan, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and STEWART, JJ. Affirmed.

Exceptions to adjudication.